UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROBERT RYAN,

                    Plaintiff,

                                              Case No. 1:20-cv-556
             v.                               JUDGE DOUGLAS R. COLE

THE PROCTER & GAMBLE
U.S. BUSINESS SERVICES
COMPANY,

                    Defendant.

## OPINION AND ORDER

In recent years, Robert Ryan had wrist and knee injuries—and resulting surgeries. His employer-sponsored health plan from Procter & Gamble offered him only limited partial disability benefits, so he administratively appealed—and eventually sued—seeking more. In Ryan's view, he is Totally Disabled under the benefit plan's definition of that term. Unfortunately for him, several doctors and the plan's administrator disagree. In this suit, he asks the Court to reject the doctors' view and find him Totally Disabled. Both parties now move for Judgment on the Administrative Record. (*See* Docs. 16, 17). For the reasons discussed below, the Court **GRANTS** the Defendant's Motion (Doc. 16) and **DENIES** Ryan's Motion (Doc. 17).

## BACKGROUND

Ryan used to work for Procter & Gamble. (Doc. 6, #17). There, he participated in The Procter & Gamble Health & Long-Term Disability Plan ("Plan"). (*Id.*). The Plan provides several benefits to company employees, including short and long-term

disability benefits, total disability benefits, and partial disability benefits. (*See generally* Doc. 14-1).

As one might imagine, many relevant terms in the Plan have complex definitions. Relevant today, "Total Disability" is

> a mental or physical condition resulting from an illness or injury that is generally considered totally disabling by the medical profession and for which the participant is receiving regular recognized treatment by a qualified medical professional. Usually, total disability involves a condition of such severity as to require care in a hospital or restriction to the immediate confines of the home.

(*Id.* at #164). And perhaps not surprisingly, "Totally Disabled" means "a person who has a Total Disability." (*Id.*). The Plan explicitly requires the *claimant* to establish that they are disabled. (*Id.*). That obligation is continuous, with physician certifications normally needed each month. (*Id.*).

Procter & Gamble itself does not run the Plan. That responsibility instead falls to the plan administrator. (*Id.* at #154). Here, that administrator is The Procter & Gamble U.S. Business Services Company, the Defendant ("P&G"). (*Id.*). The plan administrator has all "the power, responsibility, and discretionary authority necessary to carry out the administration" of the Plan. (*Id.* at #114).

All this matters because, in late 2015, Ryan fell while working in his yard and injured his left wrist. (*Id.* at #285). The fall left him in significant pain and reduced his range of motion to the point that, a few weeks later, he still complained of pain that made it hard for him to move multiple fingers. (*Id.* at #283). He began receiving disability benefits in early November. (Doc. 6, #18). That next March, he had wrist fusion surgery. (Doc. 14-1, #345). Then, in June, Dr. Nathan Schroeder cleared him

2

to work full-time performing work in the "Sedentary Physical Demand Category." (*Id.* at #239). In the following months, Dr. Samir Mahesh Patel noted improvement in Ryan's wrist multiple times. By October 2016, Patel cleared Ryan to lift up to fifteen pounds and work eight hours per day but noted that Ryan still had some pain a couple of months later. (*Id.* at #268–72).

In March 2017, Ryan had a second surgery, this time to remove hardware from the previous surgery. (*Id.* at #476). In September, Ryan saw Dr. Peter J. Stern. Ryan still complained of some pain then, so Dr. Stern assigned him a twenty-five-pound lifting restriction. (*Id.* at #303–04). Dr. Stern also noted that Ryan had "not been told that he may not be able to return to work." (*Id.* at #304).

Against that backdrop, Ryan applied for Total Disability benefits. On September 26, 2017, the Lima Review Board, a local board with authority to review and decide both initial and continuing claims under the Plan, notified Ryan that it had determined him to be Partially Disabled rather than Totally Disabled. (*Id.* at #433). The Lima Review Board noted that Ryan's "treating physician indicated that [he] could return to work" with some restrictions. (*Id.* at #434). Based on that determination, Ryan began receiving Partial Disability benefits for the fifty-two-week period the Plan specified. That meant his benefits would last him until September 18, 2018. (*Id.* at #430). Ryan appealed this decision; more on that later.

In mid-to-late 2018, Ryan also started having knee pain and sought treatment. (*Id.* at #214). On August 8, 2018, Dr. Salim Hanna noted that Ryan's wrist "has been his biggest problem" but that he now had knee pain from "catching clicking and

grinding." (*Id.*). Ryan could not identify any event that could have caused his newfound knee issues. (*Id.* at #207). At the end of October, Ryan had surgery to fix his knee trouble. (*Id.* at #200). After that, Dr. Joseph R. Misson remarked that the goal would be to "get [Ryan] back to work with some sort of light duty." (*Id.* at #198). Dr. Misson approved him for light duty with restrictions in late November. (*Id.* at #196).

On December 14, 2018, Ryan appealed the Lima Review Board's decision to award him only partially disabled status. (*Id.* at #315). As part of that appeal, Dr. Elliot Ames reviewed all available records. Dr. Ames concluded that "the objective medical information does not support" Total Disability and that Ryan could return to work "in any capacity" with the listed restrictions. (*Id.* at #555). He did not, however, examine Ryan at any time. Based on Dr. Ames's conclusions, the Disability Committee denied Ryan's appeal. (*Id.* at #563).

After losing his appeal, Ryan sued in this Court. Both parties believe they are entitled to judgment on the administrative record and have moved accordingly. (*See* Docs. 16, 17).

## LAW AND ANALYSIS

As noted, the plan administrator denied Ryan's appeal. When, as here, a plan administrator had the authority to initially determine a claimant's eligibility for benefits, the Court reviews that decision in an appellate posture, "only to determine

if [the determination] was arbitrary and capricious."[1] *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 456–57 (6th Cir. 2003) (cleaned up).

This standard is "extremely deferential." *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014). And it is "the least demanding form of judicial review." *Lloyd v. Procter & Gamble Disability Benefit Plan, Plan #501*, No. 20-4329, 2021 WL 4026683, at \*6 (6th Cir. Sept. 3, 2021) (citation omitted). Indeed, the Court will overturn the plan administrator only if the decision was "not just clearly incorrect but downright unreasonable." *Kenny v. Gen. Motors Corp.*, 24 F. App'x 330, 332 (6th Cir. 2001) (citation omitted).

Ryan contends that P&G's decision was arbitrary and capricious largely because the administrator did not adequately assess his subjective complaints. He also believes that he is totally disabled. P&G, for its part, stands by the decision (and the resulting appellate process), believing there to be ample evidence that Ryan is not totally disabled. P&G also believes that Ryan has not offered evidence showing his total disability.

P&G has the better argument here. The relevant decision was not arbitrary and capricious. And nothing Ryan put into the record amounts to evidence that the decision was "downright unreasonable."

To start, the evidence reflects that no doctor has declared Ryan Totally Disabled since he was declared only Partially Disabled. Not even his own treating

---

[1] Both the Plan itself and published Sixth Circuit case law confirm this. (*See* Doc. 14-1, #114 (granting "discretionary authority" to the Plan Administrator to "[i]nterpret the Plan[] and decide all matters arising under [it]")); *see also Lloyd v. Procter & Gamble Disability Benefit Plan, Plan #501*, No. 20-4329, 2021 WL 4026683, at \*15 (6th Cir. Sept. 3, 2021).

5

physicians consider him Totally Disabled. *Cf. Kenny*, 24 F. App'x at 331 (upholding a district court's affirmance of an administrator as not arbitrary and capricious even when the plaintiff's treating physician found a total disability and the administrator did not).

Ryan complains that "it is of extreme importance to note" that he has struggled lifting packages and sitting for a long time. (Doc. 17, #596). But that alone does not evince *Total* Disability under the Plan's definition. It may well show Partial Disability, but it is not hard to imagine gainful work that Ryan could perform that does not involve lifting heavy packages or sitting for multiple hours on end.

Ryan's belief that the process did not adequately account for his subjective complaints is equally meritless. To support this claim, he cites *Tanner v. Nationwide Mut. Ins. Co.*, 804 F. Supp. 2d 601 (S.D. Ohio 2011), where the district court found the plan administrator acted in an arbitrary and capricious manner. But the facts here do not resemble *Tanner*. There, for example, the plan administrator did not seem to address a treating physician's opinion "at all." *See id.* at 614. And the plan administrator in *Tanner* required the claimant to provide objective evidence sufficient, *in and of itself*, to establish the disability. *Id.* at 612. True, Dr. Ames noted that he did not believe the objective evidence supported a finding of Total Disability. But the Court does not read that as meaning that Dr. Ames believed Ryan was required to establish his claimed disability solely by reference to such evidence. And here, unlike in *Tanner*, Dr. Ames reviewed Ryan's entire file as part of his original

appeal, including statements submitted by several doctors. Admittedly, Dr. Ames did not see Ryan directly, but that cannot be the end-all, be-all.

No physician who has considered Ryan's ability to go back to work (or lack thereof) has found him Totally Disabled. Perhaps Dr. Hanna comes closest. But Dr. Ames concluded Dr. Hanna's comments did not even support "lifetime restrictions," let alone Total Disability. (Doc. 14-1, #558). While Ryan's subjective complaints about his pain are no doubt relevant to the conversation, the Court declines any invitation to overturn the plan administrator's findings as arbitrary and capricious, especially without even one physician, treating or otherwise, opining that it would be appropriate to do so.

In a final appeal, Ryan stresses that the Plan's definition of Total Disability uses adverbs like "injury that is *generally* considered totally disabling" and "[*u*]*sually*, total disability" requires hospitalization or home care. (*See* Doc. 19, #613–14 (emphasis original)). Ryan is right that those words serve as qualifiers. And they do contemplate the possibility that someone could have an injury or condition, for example, that did not require hospitalization or immediate home confinement but still amounted to Total Disability. But that is not the case here. Ryan may well require some restrictions in his future employment. That does not make him Totally Disabled, though. Nor does it show that the plan administrator's decision is arbitrary and capricious, which is all the Court need decide here.

## CONCLUSION

The plan administrator's decision was neither arbitrary nor capricious. So the Court **GRANTS** the Defendant's Motion for Judgment as a Matter of Law on the Administrative Record (Doc. 16) and **DENIES** Ryan's Motion for the same (Doc. 17). The Court **ORDERS** the Clerk to enter judgment for the Defendant and **TERMINATE** the case on the Court's docket.

**SO ORDERED.**

June 26, 2023
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

8